COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Frank and Humphreys
Argued at Chesapeake, Virginia


PAUL JOHNSON
                                           OPINION BY
v.    Record No. 2290-01-1          JUDGE ROBERT P. FRANK
                                         MARCH 26, 2002
PAUL JOHNSON PLASTERING AND
 NATIONAL SURETY CORPORATION


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Jean M. McKeen (Robert E. Walsh; Rutter,
          Walsh, Mills & Rutter, on briefs), for
          appellant.

          Daniel E. Lynch (John T. Cornett, Jr.;
          Williams & Lynch, on brief), for appellees.


     Paul Johnson (claimant) appeals a decision of the Workers'

Compensation Commission (commission) denying his claim for

permanent total disability for injury to the brain under Code

§ 65.2-503(C).  Claimant contends the commission erred (1) in

finding that his filing for "head" injury was not a sufficient

filing for injury to the brain, (2) in holding that, even if

claimant filed a sufficient claim for injury to the brain, he

waived that claim by executing a memorandum of agreement, and

(3) in finding that claimant's "brain injury" was not a

compensable consequence of the original work-related accident.

For the reasons stated below, we affirm in part and remand in

part.

## FACTS

Claimant worked for employer as a plasterer and drywall hanger.  On January 15, 1990, while working on stilts, claimant fell, hitting his right arm and forehead.  At the hospital, claimant was diagnosed with a broken wrist.  He was referred to Dr. Thomas Meade for further treatment of his wrist.  He also was handed two sheets, labeled "Head Injury" and "Wound Care," but the laceration to his eyebrow received no medical treatment beyond cleaning.

The wrist injury was particularly severe, and claimant developed depression.  Several months after the fall, claimant began complaining of headaches, back and neck pain, blurred vision, and lack of alertness.  Claimant returned to work on February 4, 1991, but only temporarily.

Approximately a year after the accident, claimant began receiving treatment from Dr. Jeremy Stowell for depression related to his wrist injury.  At that time, Dr. Stowell did not believe brain damage contributed to claimant's condition. Dr. Raymond Toriano, who also treated claimant, opined that claimant's problems were not related to a head injury, but developed from depression.  A cranial CT scan in January 1992 found no abnormalities in claimant's brain.

Instead of improving, claimant's condition deteriorated. In 1995, Dr. Stowell began to believe claimant suffered from cognitive defects and "dementia due to head injury."

Dr. Stowell postulated that depression was causing structural changes at the cellular level of claimant's brain, preventing him from working. Dr. Robert Hansen, who evaluated claimant, testified that none of the medical records objectively indicated claimant suffered from a brain injury. Dr. Neil Pugach, who also examined claimant, concluded with "much more than a reasonable degree of certainty that his cognitive symptoms and signs have no direct relationship whatsoever to the injury he sustained on January 15, 1990."

Employer filed a timely First Report of Accident with the commission. Claimant then sent a letter on November 27, 1990, notifying the commission and employer of the "Nature of Injury" from the January accident as "rt. wrist, head, back, left leg and foot."

The parties reached a settlement on this claim and executed a memorandum of agreement, using a form provided by the commission. The only injury listed on the form was "arm." The agreement included temporary total incapacity benefits, temporary partial incapacity benefits, and permanent partial disability benefits. The commission approved the agreement, as well as supplemental agreements relating to claimant's need for psychiatric treatment, on November 21, 1991.

On February 13, 1992, claimant filed for a change of condition award, based on his inability to continue working. He requested temporary total disability payments from November 18,

-

1991 and continuing. The commission approved a supplemental memorandum of agreement regarding this claim on September 23, 1992, and approved another supplement on January 26, 1993. A January 25, 1993 letter from employer to the commission indicated "the parties have resolved all matters in controversy."

Claimant sent a letter to the commission on May 1, 1999, seeking a "hearing for permanent total disability from August 27, 1999 to the present and continuing. Pursuant to Section 65.2-503 C(3) Claimant has suffered an 'injury to the brain which is so severe as to render the employee permanently unemployable in gainful employment.'" Claimant's temporary total disability payments were due to terminate on August 26, 1999.

The deputy commissioner denied this claim, reasoning that only brain injuries arising directly out of an accident are compensable, noting that claimant failed to file an appropriate original claim for this injury, and finding that the evidence did not support a claim for injury to the brain. The full commission affirmed this decision, finding the claim for "brain injury" was not filed, that the memorandum of agreement constituted waiver of any other claims, and that the claim was not compensable as a consequence of the original injury.

-

ANALYSIS

Claimant argues he is entitled to permanent total disability benefits based on an injury to his brain, pursuant to Code § 65.2-503(C)(3).[1] He asserts two theories in support of his claim. First, he alleges injury to his brain occurred when he fell at work in January 1990. Alternatively, he alleges a brain injury developed after January 1990 and is a compensable consequence of the depression that resulted from his wrist injury. Therefore, we must determine whether a claim exists under either of these theories.[2]

In considering these arguments, we view the evidence in the light most favorable to employer, the prevailing party below. See R. G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). "Factual findings made by the [commission] will be upheld on appeal if supported by credible evidence." James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989). However, the commission's

---

[1] Employer argues claimant did not prove he has an injury to the brain as described in Code § 65.2-503(C). The full commission, however, did not address whether the evidence was sufficient to prove "injury to the brain which is so severe as to render the employee permanently unemployable in gainful employment" as required by Code § 65.2-503(C). For this reason, and because alternative grounds exist for our decision, we do not address sufficiency of the evidence to prove this injury.

[2] A claim of injury arising out of the original accident "is quite different" from a claim based on the development of a condition subsequent. Shawley v. Shea-Ball Constr. Co., 216 Va. 442, 445, 219 S.E.2d 849, 852 (1975).

-

application of statutory and case law is not binding on this Court. Robinson v. Salvation Army, 20 Va. App. 570, 572, 459 S.E.2d 103, 104 (1995).

## A. ORIGINAL INJURY

Clearly, an immediate, original injury to the brain arising out of and in the course of employment is compensable under the Virginia Workers' Compensation Act (the VWCA). See Code §§ 65.2-100 et seq. Employer argues, however, that claimant did not properly file such a claim, and, alternatively, that claimant waived the claim when he signed a memorandum of agreement for benefits awarded to compensate him for an arm injury that occurred during the 1990 fall. We find claimant did not properly file a claim for injury to the brain.[3]

To perfect a claim for benefits under the VWCA, an employee must file notice of the claim with the commission within two years of the accident. Code § 65.2-601. This notice must include all specific injuries an employee contends are compensable. Shawley v. Shea-Ball Constr. Co., 216 Va. 442, 446, 219 S.E.2d 849, 853 (1975); Garcia v. Mantech Int'l Corp., 2 Va. App. 749, 753, 347 S.E.2d 548, 551 (1986). "Timely filing of an original claim is jurisdictional, and a claimant bears the burden of proving his claim is timely filed." Massey Builders

_____

[3] Because lack of notice prohibits any award for an original "injury to the brain" claim, we need not address whether the memorandum of agreement constituted waiver of this claim.

-

Supply Corp. v. Colgan, 36 Va. App. 496, 502, 553 S.E.2d 146, 149 (2001).

Claimant argues that his listing of "head" as an injury in his letter to the commission meets this filing requirement for a claim of permanent injury to the brain. He conceded at argument that the entire record should be examined to determine whether employer received sufficient notice. The commission held claimant did not file a claim for injury to the brain within the statutory time frame. We agree with the commission.

The purpose of filing with the commission is to provide all parties with notice of the potential issues in a case. Shawley, 216 Va. at 446, 219 S.E.2d at 852-53. While we interpret provisions of the VWCA liberally, see Garcia, 2 Va. App. at 754, 347 S.E.2d at 551; Barnett v. D. L. Bromwell, Inc., 6 Va. App. 30, 34, 366 S.E.2d 271, 272 (1988), the evidence in this record is not sufficient to prove such notice was provided here.

Claimant's initial filing with the commission on November 27, 1990, listed "Nature of Injury" from the January 15, 1990 accident as "rt. wrist, head, back, left leg and foot."[4] Claimant admits the terms "head" and "brain" are not synonymous.

The record indicates claimant had a laceration to his left eyebrow as a result of the accident, but this injury was never medically treated. The medical reports accompanying his filing

---

[4] Claimant does not request benefits based on any injuries to his back, leg, or foot.

-

pursuant to Commission Rules 1.1(B) and 1.3 do not mention an injury to the brain.

The medical evidence did include discussions of depression and some related psychiatric and cognitive problems. Reports submitted in relation to the original claim discuss severe anxiety, myofascial pain syndrome, concentration and attention span problems, tension headaches, pains throughout the body, visual and auditory hallucinations, and decreased sleep and energy levels. Claimant also suffered stress related to problems at home and at work. Employer paid for counseling and treatment of these mental problems as subsequent conditions arising out of the wrist injury.

Claimant argues that these medical reports of cognitive problems placed employer on notice of an injury to the brain. However, none of the medical evaluations conducted within two years of the accident mention any physical trauma to the brain. The only mention of a head injury, excluding the initial emergency report, appears when a doctor notes claimant could not have fallen on his tail bone in the accident as he had a laceration to his head from the fall. A cranial CT scan of claimant taken on January 20, 1992, "was a 'normal study.'" A March 6, 1992 report indicated claimant's headaches were of a "muscle constriction type . . . due to 1/15/90 injury (indirectly)." Another 1992 medical report indicates the headaches were "secondary to post injury."

-

While employer clearly knew claimant had mental problems, nothing suggested the cause of these problems was an injury to the brain that occurred during the January 1990 fall. The contemporary medical records appear to discount the possibility.[5] These facts do not support claimant's contention that he filed notice of an injury to the brain within the two-year statute of limitations established by Code § 65.2-601.

Additionally, claimant did not specifically mention any allegation of permanent and total injury in his initial filing of this claim. He simply made a claim "for all benefits to which he is or may be entitled pursuant to the Virginia Workmen's Compensation Act." This lack of detail is particularly important given the exposure an employer faces with a claim of permanent and total injury under Code § 65.2-503(C), which can entitle an employee to benefits for life as opposed to the normal limit of payments for 500 weeks. Code § 65.2-500(D); Code § 65.2-518.

The record also contains a letter sent by employer on January 25, 1993, to the commission and to claimant's attorneys, "confirm[ing] that the parties have resolved all matters in controversy." The commission's order, entered the following

---

[5] Medical evaluations suggesting an injury to the brain occurred on January 15, 1990 are important to other issues in the case; however, medical evaluations made years after the accident cannot be used to prove notice within the statutory two years.

-

day, notes, "the parties have resolved the matters in controversy." Claimant filed no response to suggest he disagreed with this conclusion.

Additionally, the memorandum of agreement executed by the parties did not mention an injury to the brain, but instead described the "[n]ature of injury" as "claimant slipped and fell from drywall slat and injured arm." This characterization of the injury indicates employer believed the only injury from the fall was to the arm.

Use of the single word, "head," generally is not sufficient filing of a claim for injury to the brain, especially where the only evidence to suggest this type of injury is a minor laceration to the eyebrow.[6] See Shawley, 216 Va. at 446-47, 219 S.E.2d at 853 (finding notice of an injury to the left ankle and right hip was insufficient filing for injuries to an employee's back and right ankle). Contrast Massey Builders, 36 Va. App. at 504-05, 553 S.E.2d at 150-51 (examining various documents, including a letter and medical records, and concluding that an injured employee did timely file his claim for benefits).

---

[6] We do not intend to establish a bright line rule for other cases. In the appropriate context, a listing of "head injury" may be sufficient to provide notice. However, the facts do not support such a finding here, given the medical reports, the memorandum of agreement, and the letter referencing a full settlement of this case. The record includes no evidence that employer was informed of the possibility of a brain injury claim until over two years after the accident. Nothing in these parties' negotiations suggests they ever considered such a claim was possible.

-

Nothing in the record provided notice that injury to the brain was a possible claim in this case. The initial claim letter, the medical reports, the memorandum of agreement, the settlement letters -- none of these documents indicate that the employer was informed of an injury to the brain.

The requirements of Code § 65.2-601 were not met. To hold otherwise would effectively vitiate the filing requirement.

### B. COMPENSABLE CONSEQUENCE

Claimant also implicitly makes a change of condition claim under Code § 65.2-708 by arguing that his brain injury developed as a consequence of his depression and, therefore, is a compensable consequence of the original injury to his arm. Claimant argues that Daniel Construction Co. v. Tolley, 24 Va. App. 70, 480 S.E.2d 146 (1997), allows award of benefits in such a case. The commission, however, found Daniel Construction prevented an award based on injury to the brain that develops subsequent to an accident.[7] We agree with claimant's interpretation of Daniel Construction.

---

[7] The commission also relied upon Elgnawey v. Northern Virginia Steel Corp., VWC File No. 131-62-48 (April 14, 1999) (unpublished), which was affirmed in an unpublished opinion of this Court. See Elgnawey v. Northern Virginia Steel Corp., Rec. No. 1144-99-4 (Va. Ct. App. March 21, 2000). An unpublished opinion of this Court is not "to be cited or relied upon as precedent except for the purpose of establishing res judicata, estoppel or the law of the case." Grajales v. Commonwealth, 4 Va. App. 1, 2 n.1, 353 S.E.2d 789, 790 n.1 (1987) (per curiam en banc). However, "a court or the commission does not err by considering the rationale and adopting it to the extent it is

-

Tolley, who was employed by Daniel Construction Company, suffered post-traumatic stress disorder as the result of an unannounced explosion during his work in a concrete factory. Id. at 73, 480 S.E.2d at 146. The commission awarded him permanent total disability benefits under a former version of the VWCA. Id. at 75, 480 S.E.2d at 147-48.

This Court upheld the award "because the medical evidence in this case proved that claimant suffered an 'injury' that resulted in 'structural changes' to the brain." Id. at 76, 480 S.E.2d at 148. The Court found the evidence supported the commission's finding that Tolley "suffered an 'injury'" as "[p]ost-traumatic stress disorder is a compensable injury if caused by either a physical injury or an obvious sudden shock or fright arising in the course of employment." Id. at 77, 480 S.E.2d at 148 (emphasis added). The Court also found evidence "of actual physical changes to claimant's brain caused by post-traumatic stress disorder" in a doctor's explanation that the disorder "results in irreversible structural changes within the neurons in the brain." Id. at 77-78, 480 S.E.2d at 149 (emphasis added).

Clearly, Daniel Construction affirmed an award of permanent total disability when the brain injury developed as a subsequent condition of the original injury. The post-traumatic stress

persuasive." Fairfax County Sch. Bd. v. Rose, 29 Va. App. 32, 39 n.3, 509 S.E.2d 525, 528 n.3 (1999).

-

disorder suffered by Tolley was not the "injury to the brain." Instead, the disorder led to structural changes in the brain that amounted to a permanent injury to the brain. Claimant correctly reads Daniel Construction as allowing compensation for injury to the brain under Code §§ 65.2-503(C) and 65.2-708(A) when the injury does not arise on the day of the accident, but instead develops as a direct consequence of an initial injury, i.e., when an initial injury, such as post-traumatic stress disorder, leads directly to brain injury.

In this case, the commission did not make any factual findings regarding injury to the brain as a compensable consequence. On remand, the commission must determine whether claimant proved he suffered an injury to the brain and, if he is so injured, whether a causal connection exists between his employment and the injury.

Because claimant did not perfect his claim of an original injury arising out of employment, we affirm the commission's denial of permanent total disability benefits on this ground. However, we remand the claim for permanent benefits under the theory of compensable consequences for factual findings by the commission.

Affirmed in part and
remanded in part.

-