COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Bray and Humphreys
Argued at Richmond, Virginia


JOHN EDWARD JENKINS
                                          MEMORANDUM OPINION* BY
v.    Record No. 3065-01-2         JUDGE JERE M. H. WILLIS, JR.
                                             JUNE 11, 2002
DYNATRAN, INC. AND
 ZURICH INSURANCE COMPANY


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Leila H. Kilgore (Benjamin M. Smith, Jr.;
              Kilgore & Smith, on brief), for appellant.

              Edward H. Grove, III (Brault Palmer Grove
              Zimmerman White & Steinhilber LLP, on brief),
              for appellees.

     John Jenkins appeals a decision of the Workers'

Compensation Commission finding that he failed to submit a claim

for a brain injury within two years of his compensable accident

and that his claim for permanent total disability is barred by

Code § 65.2-601.  We affirm the commission's decision.

                    I.   BACKGROUND

                    A.   INJURIES

     On July 30, 1991, Jenkins was working in a "cherry picker"

bucket, over traffic, changing a light bulb in a traffic signal.

A truck hit the bucket, causing the arm supporting the bucket to

break.  Jenkins fell onto the truck, was knocked out, was

_____
     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

carried some distance down the road, and then fell off the truck onto the ground.

The medical records indicate that Jenkins was "alert and oriented at the scene with stable vital signs." He was transported by emergency personnel to Fairfax Hospital, where he was diagnosed as having suffered a distal ulnar and radial fracture to the right upper extremity and an L1 compression fracture (arm and back injuries). The records report that during his evaluation in the emergency room he was "neurologically intact and the neurologic status has not changed over the last two days." He was hospitalized from July 30 to August 7, 1991.

On June 26, 1992, Jenkins was referred to Robert Fetrow, a licensed clinical social worker. Mr. Fetrow examined Jenkins and diagnosed major depression, single episode. He ruled out post-concussive syndrome. On July 23, 1992, Dr. Andrew Schiavone, a neurologist, examined Jenkins and noted the following:

> As noted above apparently there was head trauma that was associated with the fall because of the period of unconsciousness and to this day the incidents from the time that he reached for the light to the time he woke up by the side of the road are gone and his relating the story is apparently what he deduced and what was told to him by those at the scene.

-

He diagnosed Jenkins with "depressive disorder secondary to chronic pain and loss," and a "possible post-concussive disorder."

On November 17, 1992, David W. Hebda, Ph.D., saw Jenkins for a neuropsychological assessment. Following an examination, Dr. Hebda stated, "Although the existence of a preexisting attention disorder must be considered, Mr. Jenkins' pattern of responses on a variety of attentional tasks is consistent with a mild head injury . . . ." On July 10, 1997, Jenkins was referred to Amy B. Taylor, a licensed clinical social worker, for counseling. The purpose of the referral was to assist him in dealing with depression, anger control, and anxiety. Jenkins was seen by Ms. Taylor until September 1998.

## B. PROCEDURAL HISTORY

Jenkins filed a claim for compensation related to his injuries sustained in the July 30, 1991 accident. His claim was accepted as compensable and a memorandum of agreement ("MOA") was executed on May 1, 1992. The MOA recited that Jenkins was injured when he "[f]ell to the ground while changing [a] light bulb in [a] traffic signal." It described his injuries as a broken right wrist and a hurt back.

On May 2, 1992, based on the MOA, the commission awarded Jenkins ongoing temporary total disability benefits beginning on August 7, 1991. In November, 1992, the parties submitted a second MOA to the commission, correcting the average weekly

-

wage.  A second award, dated November 17, 1992, described the nature of Jenkins' injury or illness and the body parts affected, stating that he "[f]ell to ground changing [a] traffic signal bulb, injur[ing the] back & fractur[ing the] right wrist."

On February 23, 1997, Jenkins filed an application for hearing seeking payment of bills accrued while in Ms. Taylor's care.  He made no claim for head or brain injury.  Following a complete review of the medical records, the deputy commissioner found that Dynatran, Inc. would be responsible for Ms. Taylor's charges, because Jenkins' psychological problems related directly to the occupational injury.  The full commission affirmed.

On March 23, 2001, Jenkins filed an application for hearing alleging permanent total disability benefits pursuant to Code § 65.2-503(3) for "injury to the brain which is so severe as to render the employee permanently unemployable in gainful employment."  In support of that application, he submitted a letter from Dr. Schiavone dated June 18, 2001.

> To my knowledge he was gainfully, steadily employed for years leading up to this incident.  He tried to return to work after the accident.

> Post accident he sustained a head injury significant enough to cause loss of consciousness.  This led to emotional, cognitive, behavioral and ultimately employment difficulties.

-

Following a hearing, the deputy commissioner ruled that the commission lacked jurisdiction to award benefits under Code § 65.2-503, because Jenkins had filed no claim for brain trauma within two years of the July 30, 1991 accident and no "injury to the brain" had been accepted originally as compensable. The deputy commissioner noted that while the possibility of head trauma had been referenced in medical reports within five months after the accident, no claim for head injury had been included in the May 1, 1992 MOA or the November, 1992 amended MOA or covered by the resulting awards.

On October 12, 2001, the full commission affirmed. It held:

> After carefully reviewing the record in its entirety, we have found neither a specific claim for "brain injury," nor inclusion of such an injury in either of the two MOA executed within two years of the accident on July 30, 1991. The employer's "knowledge" or "notice" of the claimant's injury -- without more -- is insufficient to toll the statute of Code § 65.2-601. A claim for each such injury must be lodged with the employer and Commission.

Jenkins appeals that decision.

## II. ANALYSIS

On appeal, "[d]ecisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court." Manassas Ice & Fuel Co. v. Federated Mutual Ins. Co., 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991). "The fact that contrary evidence may be found in the

-

record is of no consequence if credible evidence supports the commission's finding." Id. We view the evidence in the light most favorable to the party prevailing below. Creedle Sales Co. v. Edmonds, 24 Va. App. 24, 26, 480 S.E.2d 123, 124 (1997). However, "[t]his Court is not bound by the legal determinations made by the commission." Robinson v. Salvation Army, 20 Va. App. 570, 572, 459 S.E.2d 103, 104 (1995).

Code § 65.2-503(C)(3) provides in pertinent part:

> C. Compensation shall be awarded pursuant to § 65.2-500 for permanent and total incapacity when there is:
>
> > 3. Injury to the brain which is so severe as to render the employee permanently unemployable in gainful employment.

Jenkins contends that the commission erred in holding that his claim for permanent total disability under Code § 65.2-503(C)(3) was time-barred because he failed to submit his claim within two years following his compensable accident.

To receive compensation, an injured employee must file a notice of claim within two years after the accident. See Code § 65.2-601. This notice must specify all injuries that are claimed to be compensable. Shawley v. Shea-Ball Constr. Co., 216 Va. 442, 446, 219 S.E.2d 849, 853 (1975). "[I]t is this notice to the employer and his insurance carrier that gives them knowledge of the accident and of their potential liability." Id.

-

Jenkins argues that his medical record provided notice of a brain injury within the two-year statutory period.  It did not.  See Johnson v. Paul Johnson Plastering, 37 Va. App. 716, 561 S.E.2d 40 (2002).

In Johnson, the claimant, while working on stilts, fell, hitting his right arm and forehead.  He was diagnosed with a broken right wrist and a lacerated eyebrow.  Several months after the fall, he began complaining of headaches, back and neck pain, blurred vision, and lack of alertness.  Instead of improving, his condition deteriorated.  The medical reports made no mention of a brain injury.  However, they included discussions of depression and of psychiatric and cognitive problems.  Id. at 719-20, 561 S.E.2d at 42.  The employer filed a first report of accident with the commission and Johnson followed by notifying the commission and his employer of the "Nature of Injury" as "rt. wrist, head, back, left leg and foot."  The parties reached a settlement on the claim and executed an MOA.  The only injury listed on the MOA was "arm."  The agreement was approved, and Johnson began receiving disability compensation.  Id. at 720-21, 561 S.E.2d at 42.

Nine years after his injury, Johnson filed a claim for permanent total disability, pursuant to Code § 65.2-503(C)(3), asserting a brain injury.  We held that his claim was time-barred.  We said:

-

Claimant argues that these medical reports of cognitive problems placed employer on notice of an injury to the brain. However, none of the medical evaluations conducted within two years of the accident mention any physical trauma to the brain. . . .

While employer clearly knew claimant had mental problems, nothing suggested the cause of these problems was an injury to the brain . . . . These facts do not support the claimant's contention that he filed notice of an injury to the brain within the two-year statute of limitations established by Code § 65.2-601.

\*       \*       \*       \*       \*       \*       \*

Additionally, the memorandum of agreement executed by the parties did not mention an injury to the brain, but instead described the "nature of injury" as "claimant slipped and fell from drywall slat and injured arm." This characterization of the injury indicates employer believed the only injury from the fall was to the arm.

Use of the single word, "head," generally is not sufficient filing of a claim for injury to the brain, especially where the only evidence to suggest this type of injury is a minor laceration to the eyebrow. Nothing in the record provided notice that injury to the brain was a possible claim in this case. The initial claim letter, the medical reports, the memorandum of agreement, the settlement letters -- none of these documents indicate the employer was informed of an injury to the brain.

The requirements of Code § 65.2-601 were not met.

Johnson, 37 Va. App. at 724-26, 561 S.E.2d at 44-45 (citations

omitted).

-

As in Johnson, nothing in the record before us provided Dynatran, within two years of Jenkins' injury, notice of a brain injury. The medical records report that when Jenkins arrived in the emergency room, he was "alert and oriented" with "stable vital signs." He was diagnosed only with arm and back injuries.

Jenkins' subsequent medical record provides little suggestion of a brain injury. On June 26, 1992, Robert Fetrow, a licensed clinical social worker, examined Jenkins and reported major depression and ruled out post-concussive syndrome. On July 23, 1992, Dr. Schiavone noted that "apparently there was head trauma that was associated with the fall . . ." but diagnosed Jenkins with depressive disorder secondary to chronic pain and loss, and a possible post-concussive disorder.

On November 17, 1992, Jenkins received a neuropsychological assessment from Dr. Hebda. Dr. Hebda noted that "[a]lthough the existence of a preexisting attention disorder must be considered, Mr. Jenkins' pattern responses on a variety of attentional tasks is consistent with a mild head injury . . . ." Although the medical records suggest the possibility that Jenkins suffered head trauma in his accident, that suggestion is insufficient to assert that he suffered a brain injury and to serve as notice of such to his employer.

The two MOAs made no mention of a brain injury and did not put the employer on notice of such. The May 1, 1992 MOA stated that Jenkins had suffered a broken right wrist and back

-

injuries.  The November, 1992 MOA modified only the average weekly wage.  It included no amendment to the section designating the injury or illness.  Nothing in the record provided, within the two-year statute of limitation, notice that brain injury was a claim in the case.

The decision of the commission is affirmed.

<u>Affirmed.</u>