PRESENT: Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and Lemons, JJ., and Carrico,[1] S.J.

PAUL JOHNSON PLASTERING, ET AL.

v.  Record No. 020994     OPINION BY JUSTICE ELIZABETH B. LACY
                                        February 28, 2003
PAUL JOHNSON

FROM THE COURT OF APPEALS OF VIRGINIA

This appeal involves an employee's claim that he suffered a brain injury and is entitled to permanent total disability benefits pursuant to Code § 65.2-503(C)(3).

Paul Johnson was employed as a plasterer and drywall installer.  On January 15, 1990, he fell while standing on 42" drywall stilts.  He was taken to a hospital emergency room, diagnosed with a fracture of the right wrist, and referred to an orthopedist.  He was also treated for abrasions on his forehead.  Dr. Thomas S. Meade, Jr., an orthopedist, put a cast on Johnson's right arm and told him he could not work for at least two months.

In March 1990, Johnson returned to Dr. Meade complaining of neck, hand, back, and leg pain which Johnson attributed to the January accident.  In May 1990, Johnson was still complaining of pain in his wrist and lower back and numbness in his left leg.  He also complained of vision problems, headaches, and

_____

[1] Chief Justice Carrico presided and participated in the hearing and decision of this case prior to the effective date of his retirement on January 31, 2003.

depression.  Johnson had residual effects from the wrist fracture and chronic low back pain.  He also continued to be depressed, a condition referred to as "chronic depression" by Dr. Meade.  Dr. Meade referred Johnson to Dr. Robert A. Nash, a neurologist, for evaluation.  In September 1990, Dr. Nash noted that Johnson was no longer in pain but was slightly depressed. Dr. Nash allowed Johnson to begin restricted work duties.

In October 1990, Dr. Nash referred Johnson to Harold J. Kornylak, an osteopath, who apparently saw Johnson through March 1991.  During this time Johnson complained of severe headaches, nausea, and difficulty hearing conversations because of "background noise."  Although Johnson tried to return to work, Dr. Meade noted that the stress of work was too much for Johnson to handle.  At this point, Dr. Meade referred Johnson to Dr. R. Jeremy A. Stowell, a psychiatrist, for treatment because Johnson was "chronically depressed" and not "tolerating his job well."

Dr. Stowell diagnosed Johnson as having a major depressive disorder and recommended medical management.  Dr. Raymond G. Troiano performed a neurological consultation, reporting in August 1991 that Johnson's headaches, dizziness, and other neurological problems were related to depression which "could be triggered" by the head injury.  Dr. Troiano recommended a CT

2

imaging of the brain[2] which was performed by Dr. Mark Cramer on January 20, 1992. His impression of the CT scan results was that it was a "normal study" and showed no signs of brain damage.

Johnson filed a claim for workers' compensation benefits by letter dated November 27, 1990 in which he referred to the January 1990 accident as causing injury to his "rt. wrist, head, back, left leg and foot." The employer agreed that Johnson had suffered a compensable injury by accident and Johnson received payments for both temporary total and temporary partial disability based on the wrist injury. In 1993, the Commission entered an order based on a memorandum of agreement between Johnson and the compensation insurance carrier providing that Johnson was entitled to payment of his medical bills and temporary total disability benefits of $382.00 a week beginning December 11, 1991.

The required payments were made and medical bills were paid for the following eight years. During that time, Johnson continued to suffer from depression and associated problems and was treated by a number of doctors including Drs. Meade, Stowell, and Kornylak. Dr. Stowell referred Johnson to Dr.

---

[2] CT scan, or computed tomography, is a diagnostic procedure used to produce a series of cross-section images of internal body parts. The Sloane-Dorland Annotated Medical-Legal Dictionary 536 (1992 Supp.).

James P. Polk for evaluation of Johnson's cognitive defects, depression, headaches, and hallucinations. Dr. Polk stated in both his 1995 and 1998 reports that Johnson's cognitive defects were "consistent with the diagnosis of a traumatic brain injury" sustained in the January 1990 industrial accident.

In 1998, Johnson was evaluated by Charles DeMark, a certified rehabilitation counselor. DeMark concluded that Johnson was permanently and totally disabled because of his "deficits due to the traumatic brain injury" and his physical limitations resulting from his wrist and back injuries.

On May 1, 1999, three months before the statutory termination of his temporary total disability compensation benefits under Code § 65.2-500(D), Johnson filed an application with the Workers' Compensation Commission for permanent total disability benefits pursuant to Code § 65.2-503(C)(3), claiming that he suffered an injury to the brain. Johnson maintained that his brain injury developed from the depression he suffered as a result of his wrist injury or, alternatively, that the brain injury was caused directly by the blow or trauma to his head when he fell in the 1990 industrial accident. The 1998 reports by DeMark and Dr. Polk were submitted in support of Johnson's application.

At the hearing on Johnson's application, in addition to Johnson's testimony, the deputy commissioner admitted into

evidence medical evaluations and notes regarding Johnson's condition including evaluations conducted for purposes of the hearing. Briefly, this evidence included opinions by Johnson's doctors that his disability resulted from a structural change in his brain or a brain injury that developed from his depression which in turn was caused by the injury to his wrist, or, alternatively, from a brain injury suffered when his head hit the ground in the 1990 fall. Opinions of medical experts offered by the employer generally concluded that Johnson did not suffer a brain injury as a result of the 1990 fall and that depression, while causing some cognitive defects, does not cause brain injury, and did not cause the brain injury claimed in this case. Based on this record, the deputy commissioner denied Johnson's claim.

First, the deputy commissioner concluded that prior cases, including Daniel Construction Co. v. Tolley, 24 Va. App. 70, 480 S.E.2d 145 (1997), precluded an award under Code § 65.2-503(C)(3) for an injury that was a subsequent condition caused by an injury sustained in an industrial accident. Therefore, the deputy commissioner held that, if the brain injury claimed by Johnson developed from his depression, it was not compensable because it was not directly caused by the 1990 accident.

The deputy commissioner also denied compensation for a brain injury that Johnson claimed was caused directly by the

5

1990 accidental fall. The deputy commissioner stated two grounds for this holding. First, the deputy commissioner determined that this claim was untimely because it was not filed within two years of the date of the accident. See Code § 65.2-601. The claim filed in 1990 did not identify an injury to Johnson's brain, and none of the medical records for the time in question referred to an injury to the brain. Further, the memorandum of agreement entered in 1991 recited that the January 1990 accident resulted in an injury to Johnson's arm and that the memorandum settled "all matters in controversy." The deputy commissioner observed that, based on this evidence, when the claim for benefits was made in 1990 and during the two year period following the accident, none of the parties treated or diagnosed Johnson as suffering from a brain injury sustained in the 1990 accident. Therefore, the deputy commissioner concluded that the reference in Johnson's application for benefits to a "head" injury was not an application for benefits based on a brain injury; such an application was not made until 1999 and, therefore, was untimely.

Alternately, the deputy commissioner concluded that the claim would be denied on the merits. The deputy commissioner noted that the medical opinion in the case was virtually unanimous that the claimant suffers from depression and other psychological difficulties as a result of the pain and

6

disability that he has suffered as a result of his arm injury of January 15, 1990, and he continues to be entitled to medical treatment for those conditions. Nevertheless, the deputy commissioner was persuaded based on the evidence in the record that Johnson "did not suffer an injury to the brain on January 15, 1990, that resulted in cognitive defects that now render the claimant unemployable."

Johnson appealed this decision to the full Commission. The Commission, like the deputy commissioner, held that Johnson failed to timely file his claim for a brain injury. The Commission further stated that, even if the 1990 claim for a head injury was broad enough to encompass a brain injury, the claimant abandoned his claim for a brain injury when he executed the memorandum of agreement in 1991 which resolved all matters in controversy and did not cover any claim for a head or brain injury. The Commission did not address whether Johnson suffered a brain injury in the 1990 industrial accident. Johnson appealed the Commission's decision.

The Court of Appeals in a published opinion affirmed the Commission's decision that the claim for a brain injury was untimely. Johnson v. Johnson Plastering and National Surety Corp., 37 Va. App. 716, 561 S.E.2d 40 (2002). The Court of Appeals, however, disagreed with the Commission's determination that permanent total disability benefits pursuant to Code

7

§ 65.2-503(C)(3) are available only if such injury was directly caused by the industrial accident and held that benefits are available for an injury that is the consequence of the injury caused by the industrial accident. The Court of Appeals ordered that the case be remanded to the Commission for a factual determination whether Johnson suffered a brain injury that was the consequence of the injury caused by the industrial accident. Id. at 728, 561 S.E.2d at 46.

Both the employer and Johnson appealed to this Court. The employer asserts that the order of remand was error, and Johnson asserts that the Court of Appeals erred in holding that the 1990 filing for benefits based on a head injury was insufficient to constitute a claim for an injury to the brain.[3]

I.

Johnson asks us to reverse the holding by the Court of Appeals that his claim for benefits based on a brain injury was not timely filed. The record in this case shows, however, that even if we were to agree with Johnson's position, he would not be entitled to the benefits he seeks. In addition to holding that the claim based on a brain injury was not timely filed, the

_____

[3] Johnson also asserted that the Court of Appeals erred in holding that execution of the memorandum of agreement waived any claim to an injury to the brain. The Court of Appeals did not address this issue, however, and accordingly, we will not address this assignment of error. Johnson, 37 Va. App. at 722 n.3, 561 S.E.2d at 43 n.3.

8

deputy commissioner concluded that the medical evidence did not

support a finding that Johnson suffered a brain injury at the

time of the January 1990 accident as a result of trauma to the

head.  This factual finding was never set aside and precludes

Johnson from receiving permanent total disability benefits based

on his claim that he suffered a brain injury when he fell and

hit his head in the 1990 accident.[4]  In light of this factual

determination, resolution of the timeliness of his claim, the

issue presented in his cross-error, would have no impact on

Johnson's eligibility to receive the compensation benefits he

seeks for a brain injury incurred in the January 1990 industrial

accident.  Therefore, we will not address this issue.

Whether Johnson is entitled to recover benefits for a brain

injury developed from some other source is the issue raised by

the employer's assignment of error, and we now turn to that

issue.

## II.

The employer assigns error to that part of the decision of

the Court of Appeals remanding the matter to the Commission to

determine whether the claimant "suffered an injury to the brain

and, if he is so injured, whether a causal connection exists

---

[4] Johnson appealed this finding to the Commission but the
Commission did not address the finding and Johnson did not
pursue the matter further.

9

between his employment and the injury." <u>Johnson</u>, 37 Va. App. at 727, 561 S.E.2d at 46.

The Court of Appeals' directive was predicated on its application of the doctrine of compensable consequence to claims for permanent total disability awards under Code § 65.2-503(C)(3). That section provides, in pertinent part, that a claimant may recover for permanent and total incapacity when there is "[i]njury to the brain which is so severe as to render the employee permanently unemployable in gainful employment." Code § 65.2-503(C)(3). The deputy commissioner and the Commission, relying on <u>Daniel Construction</u>, held that awards under this statute could not be based on an injury to the brain that develops subsequent to an accident. The Court of Appeals rejected this construction of the statute and of <u>Daniel Construction</u>, holding that an injury under Code § 65.2-503(C)(3) is compensable "when the injury does not arise on the day of the accident, but instead develops as a direct consequence of an initial injury." <u>Johnson</u>, 37 Va. App. at 727, 561 S.E.2d at 46. This holding is consistent with the principle established in <u>Amoco Foam Products Co. v. Johnson</u>, 257 Va. 29, 510 S.E.2d 443 (1999).

In <u>Amoco Foam</u>, we held that an injury suffered as a direct result of an industrial accident may give rise to other compensable injuries. In that case, the industrial accident

10

directly injured the employee's left ankle. While the employee was recovering from surgery necessitated by the left ankle injury, the left ankle gave way, causing injury to the employee's right knee. Two years later, the employee's right knee "gave out" causing another fall. Id. at 31, 510 S.E.2d at 443. We concluded that the initial injury to the right knee was compensable as a direct consequence of the left ankle injury but that the second injury to the right knee was not compensable. To be a compensable injury, the causation link "must directly connect the original accidental injury with the additional injury for which compensation is sought." Id., 510 S.E.2d at 445. In Amoco Foam, the initial knee injury was the causal link between the left ankle injured in the industrial accident and the second right knee injury. Without any direct link between an injury caused by the industrial accident and the injury for which compensation is sought, there can be no compensation. Id. at 33, 510 S.E.2d 444-45.

While we agree with the Court of Appeals' analysis, we disagree with its conclusion that a remand of the matter to the Commission for further factual findings is required.

Johnson seeks permanent total disability benefits based on a brain injury. He has consistently asserted that his brain injury was caused (1) by his depression which was caused by the initial injury to his wrist in the industrial accident; or (2)

11

by the blow or trauma to his head when he fell in the industrial accident; or (3) by both. Applying Amoco Foam, if the brain injury was caused by the depression which developed from the wrist injury, the brain injury is not compensable because, under this theory, there is no direct causal link between that brain injury and the original industrial accident injury, the wrist injury.

The second claimed cause of the brain injury is the industrial accident itself. Recovery under this theory does not involve the application of the compensable consequences doctrine; however, recovery under this theory has already been eliminated by the deputy commissioner's factual finding discussed above, that no brain injury was caused by the initial industrial accident.

Johnson has not identified any other injury as the source of the brain injury for which he seeks benefits. He has never asserted that his brain injury was a condition subsequent to any injury other than the depression. Furthermore, nothing in the extensive medical testimony in this record suggests any other injury as the source of the brain injury. All the doctors asserting that Johnson had a brain injury opined that either the depression or the initial trauma to the head caused the claimed brain injury. On this record, therefore, there is no basis for remanding this case to the Commission.

12

In summary, for the reasons stated, we will reverse that portion of the Court of Appeals' judgment remanding the case to the Commission and enter final judgment in favor of the employer.

Reversed and final judgment.