COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Clements and Beales
Argued at Richmond, Virginia


JOSEPH A. BANK CLOTHIERS, INC. AND
  CENTENNIAL INSURANCE COMPANY

v.      Record No. 0557-06-4

GLADYS D. MORTON                                MEMORANDUM OPINION[*] BY
                                                JUDGE JEAN HARRISON CLEMENTS
GLADYS D. MORTON                                         MAY 8, 2007

v.      Record No. 1217-06-2

JOSEPH A. BANK CLOTHIERS, INC. AND
  CENTENNIAL INSURANCE COMPANY


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Joseph C. Veith, III (Trichilo, Bancroft, McGavin, Horvath &
            Judkins, P.C., on briefs), for Joseph A. Banks Clothiers, Inc. and
            Centennial Insurance Company.

            Roger A. Ritchie, Jr. (Ritchie Law Firm, P.L.C., on briefs), for
            Gladys D. Morton.


        These separate appeals arise from a single judgment by the Workers' Compensation

Commission (commission) awarding Gladys D. Morton (claimant) certain medical benefits on

her claim against Joseph A. Bank Clothiers, Inc. and its carrier, Centennial Insurance Company

(collectively, employer).  In its appeal, employer contends the commission erred in concluding

that (1) the two-year statute of limitations contained in Code § 65.2-601 did not bar claimant's

claim for benefits and (2) claimant's injury by accident arose out of her employment.  In her

appeal, claimant contends the commission erred in finding she did not carry her burden of

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

proving the medical treatment she received after January 2003 was causally related to her injury by accident. Because these appeals involve common facts and proceedings, we consolidate them for the purposes of this decision. See Bennett v. Commonwealth, 8 Va. App. 228, 229 n.1, 380 S.E.2d 17, 18 n.1 (1989). Finding no error, we affirm the judgment of the commission.

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of these appeals.

## I. BACKGROUND

"By well established principles, we view the evidence in the record in the light most favorable to the party prevailing before the commission." Boys and Girls Club of Virginia v. Marshall, 37 Va. App. 83, 85, 554 S.E.2d 104, 105 (2001). So viewed, the evidence established that, on October 14, 2002, claimant was working for employer as a tailor in its Charlottesville store. On that date, having completed her prior assignment, claimant went to a clothes rack to retrieve more suits to take back to her work station to tailor. Arriving at the rack, claimant reached up with her right hand and grabbed the hangers of two suits hanging on the rack. When she lifted the suits off the rack, she felt something "pop[] in the [right side of the] lower part of her neck." At the same time, she experienced a sudden, sharp spasm of pain in her lower neck. The pain then radiated up the right side of her head. Despite working as a tailor for twenty years, claimant had suffered no neck pain before that moment.

After informing the store manager, Sondra Wells, that she had hurt her neck while getting suits from the rack, claimant went to the local emergency room. Wells completed an "incident report" regarding claimant's injury and faxed it to the human resources department at employer's main headquarters in Maryland.

- 2 -

At the emergency room, claimant was diagnosed with a right "trapezius muscle spasm." She was treated with ibuprofen and a muscle relaxant and directed to contact her doctor if the pain continued more than two days.

When claimant returned to work three days later, she gave Wells a medical note for her absence. The note identified the date of accident as October 14, 2002, the period of absence from work as October 14-16, 2002, and the injury as a "trapezius muscle spasm." Wells faxed this note to the human resources department and provided claimant with documentation that she filled out and signed "for workers' comp[ensation]."

On November 1, 2002, claimant sought treatment from her family physician, Dr. Susan Pollart, for the "chronic ache" in her neck. Dr. Pollart's examination of claimant's neck revealed a "tender spot in the paraspinous muscles to the right side of [claimant's] cervical spine" and a "muscle spasm in that area." Dr. Pollart diagnosed claimant as suffering from a "[m]usculoskeletal injury and muscle spasm related to a neck injury on the job." Dr. Pollart referred claimant "to physical therapy for evaluation and treatment."

On January 8, 2003, claimant returned to Dr. Pollart's office for treatment of her continuing neck pain. After examining claimant, Dr. Pollart diagnosed her as suffering from "musculoskeletal neck pain related to injury at work now with improved symptoms." Observing, however, that claimant had a "new symptom" of "a tender trigger point at the base of the occiput on the right" that, when palpitated, produced "shooting pain" that radiated to the top of her head, Dr. Pollart referred claimant to Dr. Craig Seto, who had "advanced training in musculoskeletal disease," for "follow-up and possible injection." Dr. Pollart was not involved in claimant's medical treatment for her neck pain following the referral to Dr. Seto.

Claimant saw Dr. Seto on January 20, 2003. Dr. Seto noted that claimant reported she had "work[ed] as a sewing person . . . for the last 20 years or so" and that her neck condition

- 3 -

commenced "in October 2002" as she was "reaching up with her right hand and felt a snap and pop in the right posterior aspect of her neck." After examining claimant, Dr. Seto diagnosed her as suffering from "right posterior neck pain with radiating pain up into the scalp area on the right side." Noting that claimant's condition was "a somewhat unusual presentation" and made him "very suspicious [of] some type of nerve impingement to some of the superficial scalp nerves," Dr. Seto ordered that cervical spine X-rays be taken "to rule out significant degenerative joint disease or disc disease." The X-rays revealed "degenerative changes at C5-6 with mild foraminal stenosis bilaterally." Dr. Seto recommended that claimant commence medication therapy and use caution with her "head movement while at work" since he "believed that this [was] a big part of her condition." Dr. Seto indicated he wanted claimant to return in two weeks for a follow-up appointment.

Claimant did not return again to Dr. Seto's office until October 16, 2003, at which time she reported continuing "right neck . . . pain radiating up the neck and into head," which had been "going on for a number of years." Concerned that claimant had a "herniated disk causing pressure on some of the nerve roots with a radicular symptom" or an "osteophytic hypertrophy pressing on some nerves that are getting pinched whenever she moves her neck," Dr. Seto ordered an MRI of her neck.

When claimant returned for a follow-up appointment in November 2003, Dr. Seto noted that claimant had failed to obtain the ordered MRI. Dr. Seto reiterated his assessment that claimant's neck pain was "thought to be secondary to possibly cervical spine impingement of some of the superficial nerve roots versus a herniated disk of the cervical spine" and urged claimant "to get the MRI done in order to get a better idea of what is going on and causing this problem."

Claimant did not obtain the ordered MRI until March 2004. The MRI revealed "multi-level degenerative changes with moderate to severe central canal stenosis at C6-7 caused by a central disk extrusion" and "moderate-to-severe central canal stenosis . . . at C5-6."

When he next saw claimant on April 20, 2004, Dr. Seto noted that claimant's occupation as a tailor for approximately 20 years involved a "great deal of head and neck movement, as well as over head motion of her arms." Dr. Seto opined that the "repetitive head and neck motions . . . played a factor in her current situation." He informed claimant that "continued activity in her occupation [was] not something that [was] going to be very good for her neck . . . given the extent of the spinal stenosis on her MRI" and referred her to a physical therapist for "ergonomic assessment of her workplace."

On April 28, 2004, claimant returned to Dr. Seto's office, complaining of increased pain. Dr. Seto diagnosed the claimant as suffering from "significant degenerative disk and degenerative joint disease of the cervical spine causing significant nerve root impingement as well as . . . spinal stenosis." He opined that this condition was "probably what [was] causing a great deal of [claimant's] symptoms, since her workplace cause[d] her to use her neck in a number of probably poorly ergonomic ways."

Dr. Seto saw claimant again in June 2004. He diagnosed her as suffering from "severe degenerative disk and degenerative joint disease with subsequent spinal stenosis of the cervical spine and atypical symptoms of shooting, sharp pains up into the scalp." Noting that he had "run out of options on how to treat her," Dr. Seto referred claimant to the pain management clinic.

Dr. Scott Chirichetti of the pain management clinic saw claimant on September 8, 2004. He assessed claimant's condition as "[c]hronic neck pain with degenerative joint disease" and "[r]right scalp radicular pain, possibly due to occipital neuralgia."

After being informed by the staff at the pain management clinic that workers' compensation "was not paying for [her treatment]," claimant contacted a claims representative, who informed her that her "workers' comp[ensation] claim ha[d] been closed [for] over two years." Claimant then went to Richmond on October 13, 2004, and filed with the commission a claim for benefits, seeking lifetime medical benefits related to the injury she suffered at work. Claimant indicated on the claim form that the accident occurred when she "was getting [her] work off the rack up high," but she mistakenly identified the date of the accident as "October 14, 2004," and the resultant injury as a "[t]rapezium muscle spasm."[1]

The commission subsequently sent employer a notification letter and a request for employer's accident report. On December 8, 2004, and December 21, 2004, employer sent letters to the commission asking it to "update [the commission's] records" to show that the accident for which the claim was filed occurred on October 14, 2002, rather than October 14, 2004. In response to a request for clarification from the commission, claimant notified the commission that the date of her accident was October 14, 2002, not October 14, 2004, which she "mistakenly wrote" on the claim for benefits form. The commission then notified employer of the corrected date of the accident.

Dr. Seto saw claimant again in December 2004. After that visit, Dr. Seto wrote that claimant's "chronic neck pain and radicular sensations up into the scalp and face [were] most likely related to the primary condition of severe degenerative disk and joint disease causing neuroforaminal stenosis and nerve structure compression." He further opined that claimant's "job ha[d] been aggravating to this condition if not part of the etiology of this condition."

---

[1] As the deputy commissioner and commission noted, the trapezium is a bone in the wrist and the trapezius is a muscle in the neck and upper back. Here, claimant sustained an injury to her neck, not her wrist.

Following another visit in January 2005, Dr. Seto diagnosed claimant as having "severe cervical neck pain secondary to severe degenerative joint disease and disc disease resulting in severe spinal stenosis and foraminal stenosis, most likely occupationally related." He referred claimant to "physical therapy to have them work on appropriate posture of her cervical spine to minimize traction on the cervical nerve roots and to decrease her symptoms of pain."

On July 7, 2005, claimant filed a motion with the commission to amend the nature of the injury and the date of the accident listed on her claim for benefits. Employer opposed the motion, arguing that claimant's claim was barred by the statute of limitations because no claim alleging a neck injury on October 14, 2002, had been filed within two years of the alleged accident. Resolution of the motion was deferred pending the evidentiary hearing on claimant's claim.

A hearing was held before the deputy commissioner on July 21, 2005. Dr. Pollart testified by deposition that the neck injury she diagnosed claimant as suffering from in November 2002 and January 2003 was caused by claimant's October 14, 2002 work-related accident. Dr. Pollart admitted she had not seen claimant since January 2003 and did not know the cause of the degenerative changes to claimant's cervical spine or whether those changes were caused by or related to the October 14, 2002 accident. She explained that such degenerative changes "usually occur over a period of years." Dr. Pollart provided no opinion as to whether the treatment claimant received with Dr. Seto was causally related to claimant's October 14, 2002 injury by accident.

Following the hearing, the deputy commissioner found that claimant's claim was not barred by the statute of limitations, that claimant's October 14, 2002 injury arose out of her employment with employer, and that claimant failed to prove the medical treatment she received after January 2003 was causally related to her October 14, 2002 injury by accident. On review,

the commission affirmed the judgment of the deputy commissioner, and these appeals by employer and claimant followed.

## II.  STATUTE OF LIMITATIONS

In its appeal, employer contends the statute of limitations set forth in Code § 65.2-601 barred claimant's claim for benefits because the only claim claimant filed within two years of the accident failed to correctly identify the date of accident or the existence of a neck or "trapezius" injury.  Thus, employer concludes, the commission erred in finding claimant's claim was not time barred.  We disagree.

"A claim for compensation must be filed with the commission within two years after the accident or the claim shall be forever barred.  Code § 65.2-601.  This provision is jurisdictional, and failure to file within the prescribed time will bar a claim."  Mayberry v. Alcoa Bldg. Prods. 18 Va. App. 18, 20, 441 S.E.2d 349, 350 (1994).  The claimant has the burden of showing the "claim was timely filed."  Binswanger Glass Co. v. Wallace, 214 Va. 70, 73, 197 S.E.2d 191, 193 (1973).

"The intent and purpose of Code § 65.2-601 is to require notice to the employer of its potential liability for an injury sustained by an employee."  Metro Machine Corp. v. Sowers, 33 Va. App. 197, 204, 532 S.E.2d 341, 345 (2000); see Johnson v. Paul Johnson Plastering, 37 Va. App. 716, 723, 561 S.E.2d 40, 44 (2002) ("The purpose of filing with the commission is to provide all parties with notice of the potential issues in a case.").

> Such notice is often the first knowledge that an employer and [its] insurance carrier have of an accident and of their potential liability. It is this notice that sets in motion the machinery to determine whether or not an employee has in fact been injured, the nature of the injury, whether it arose out of and in the course of his employment, whether permanent or temporary, and whether compensable or not.  This is the notice which activates the right of

- 8 -

the employee to compensation and which invokes the jurisdiction of the Industrial Commission.

Shawley v. Shea-Ball Constr. Co., 216 Va. 442, 446, 219 S.E.2d 849, 852 (1975).

To this end, the claim "must identify the employer, the date of accident, the location of the accident, and the injuries suffered" and "'fairly apprise the commission that a claim [is] being made.'" Cheski v. Arlington County Pub. Schs., 16 Va. App. 936, 938, 434 S.E.2d 353, 355 (1993) (quoting Trammel Crow Co. v. Redmond, 12 Va. App. 610, 614, 405 S.E.2d 632, 634 (1991)). Formal pleadings, however, "are not required, and so long as the notice advises the commission of necessary elements of the claim, it activates the right of the employee to compensation and invokes the jurisdiction of the commission." Keith v. Ball Metal Beverage Container Corp., 45 Va. App. 50, 54, 608 S.E.2d 501, 503 (2005). Whether the information filed with the commission is sufficient to constitute a timely filed claim is a question of fact, and the commission's finding will not be disturbed on appeal if supported by credible evidence. See Fairfax County Sch. Bd. v. Humphrey, 41 Va. App. 147, 158, 583 S.E.2d 65, 70 (2003).

Here, the commission found that, although the claim form filed by claimant on October 13, 2004, incorrectly identified the date of accident as October 14, 2004, rather than October 14, 2002, and described the alleged injury as a trapezium muscle spasm, rather than a trapezius muscle spasm, it fulfilled the purpose of Code § 65.2-601 and, thus, constituted a timely filed claim for benefits. The commission's finding is supported by credible evidence.

Immediately after the accident on October 14, 2002, claimant notified the store manager that she had hurt her neck while getting suits to tailor from the rack and needed to go to the emergency room as a result. The store manager completed an "incident report" regarding claimant's accident and resultant neck injury and faxed it to employer's main headquarters. When claimant returned to work three days later, she gave the store manager a note from the doctor, identifying the date of accident as October 14, 2002, and the injury as a "trapezius

- 9 -

muscle spasm." The store manager faxed this note to employer's main headquarters and gave claimant documentation that she filled out and signed "for workers' comp[ensation]." Claimant's medical records consistently identified the date of the work-related accident as October 14, 2002, and described claimant's condition as involving her neck.

Thus, employer had notice of the correct date and nature of the injury from the outset of claimant's condition, and the claim form filed by claimant on October 13, 2004, which properly listed claimant's name, employer's name, the location of the store where the injury occurred, and how the injury occurred, provided sufficient information to enable the employer to recognize the injury for which it was potentially liable. Indeed, when notified by the commission that claimant had filed the claim, employer advised the commission on December 8, 2004, and December 21, 2004, that the correct date of the accident for which the claim was filed was October 14, 2002, not October 14, 2004. The claim form's inclusion of the wrong year in the accident date and the wrong letter in the spelling of the injury—entries that were obvious oversights[2]—did not negate that notice. Accordingly, the claim form timely filed by claimant on October 13, 2004, set in motion the machinery to determine the merits of the claim and invoked the commission's jurisdiction. See Shawley, 216 Va. at 446, 219 S.E.2d at 852.

We hold, therefore, that the commission did not err in finding that the two-year statute of limitations contained in Code § 65.2-601 did not bar claimant's claim for benefits.

---

[2] As the full commission noted, the accident date listed in the claim form was an obvious error because "claimant would not allege a date of accident as the day after she filed her claim." And, as the deputy commissioner noted, the description of the nature of the injury was an obvious error because, while a "trapezius, a muscle, can spasm," a "trapezium, a bone, is not a muscle and cannot spasm."

- 10 -

III. INJURY BY ACCIDENT

Employer also contends the commission erred in finding claimant met her burden of proving her October 14, 2002 injury arose out of her employment. We disagree.

To recover benefits under the Workers' Compensation Act, an injured employee "must establish by a preponderance of the evidence that [s]he suffered an injury by accident 'arising out of . . . [her] employment.'" Falls Church Constr. Corp. v. Valle, 21 Va. App. 351, 359-60, 464 S.E.2d 517, 522 (1995) (quoting Code § 65.2-101).

> "An injury arises 'out of' the employment[] when there is apparent to the rational mind[,] upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. . . . But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood."

Combs v. Virginia Elec. & Power Co., 259 Va. 503, 509, 525 S.E.2d 278, 282 (2000) (quoting In re Employers' Liab. Assur. Corp., 102 N.E. 697, 697 (Mass. 1913)). Thus, "[t]he mere happening of an accident at the workplace, not caused by any work[-]related risk or significant work[-]related exertion, is not compensable." Plumb Rite Plumbing Serv. v. Barbour, 8 Va. App. 482, 484, 382 S.E.2d 305, 306 (1989); see Southside Virginia Training Ctr. v. Ellis, 33 Va. App. 824, 829, 537 S.E.2d 35, 37 (2000) ("Simple acts of walking, bending, or turning, without any other contributing environmental factors, are not risks of employment.").

The determination whether an injury arose out of the injured employee's employment "involves a mixed question of law and fact, which we review *de novo* on appeal." Blaustein v. Mitre Corp., 36 Va. App. 344, 348, 550 S.E.2d 336, 338 (2001). "The actual determination of causation is a factual finding that will not be disturbed on appeal if there is credible evidence [in

the record] to support the finding." Ingersoll-Rand Co. v. Musick, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989).

Here, credible evidence supports the commission's finding that claimant's injury was caused by her reaching up and simultaneously lifting two suits off a clothes rack with one hand. Claimant testified that, while working as a tailor for employer, she went to a clothes rack to get more suits to take back to her work station to tailor. Arriving at the clothes rack, she reached up with her right hand and grabbed the hangers of two suits hanging on the rack. When she lifted the suits off the rack, she felt a "pop" in her neck accompanied by a spasm of pain that radiated up to her head. It is clear from this evidence that claimant was performing a task she was employed to perform when she was injured. It is equally clear that claimant was not merely turning or reaching when she sustained the injury. Rather, as part of her work duties, she was reaching up and lifting two suits off a clothes rack with one hand. While not a task exclusive to tailors, claimant's act of lifting two suits with one hand constituted a significant work-related exertion and presented an injurious risk to which, apart from her employment, she, like the general public, would not have been *equally* exposed. Thus, we agree with the commission that this act by claimant "was sufficient to constitute an injury by accident arising out of her employment."

Accordingly, we hold the commission did not err in finding claimant proved her October 14, 2002 injury arose out of her employment.

## IV. MEDICAL TREATMENT AFTER JANUARY 2003

In her appeal, claimant contends the commission erred in finding she failed to carry her burden of proving the medical treatment she received after January 2003 was causally related to her October 14, 2002 injury by accident. We disagree.

- 12 -

To recover the costs of medical treatment under the Workers' Compensation Act, an injured employee must prove that treatment was causally related to the compensable injury by accident. See Volvo White Truck Corp. v. Hedge, 1 Va. App. 195, 199, 336 S.E.2d 903, 906 (1985). Here, the commission determined that claimant failed to present sufficient evidence to prove the medical treatment she received after January 2003 was causally related to her compensable injury. Unless we can say as a matter of law that claimant sustained her burden of proving causation, the commission's finding is binding and conclusive upon us. See Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970); Ingersoll-Rand Co., 7 Va. App. at 688, 376 S.E.2d at 817 ("The actual determination of causation is a factual finding that will not be disturbed on appeal if there is credible evidence to support the finding.").

The uncontradicted medical evidence in this case supports the commission's conclusion that claimant failed to prove the medical treatment she received after January 2003 was causally related to the October 14, 2002 injury by accident. Although Dr. Pollart, who treated claimant on November 1, 2002, and January 8, 2003, causally related claimant's neck pain to the October 14, 2002 accident, the doctors who subsequently treated claimant did not. Indeed, the record is devoid of any medical evidence causally relating claimant's symptoms after January 8, 2003, to the industrial accident.

After examining claimant on January 8, 2003, Dr. Pollart referred claimant to Dr. Seto, who had "advanced training in musculoskeletal disease." Commencing January 20, 2003, Dr. Seto saw claimant at least eight times prior to the evidentiary hearing. Throughout that time, Dr. Seto consistently opined that claimant's neck condition was probably caused by degenerative disk and joint disease of the cervical spine, related to claimant's twenty-year work history as a tailor. The X-rays he ordered revealed "degenerative changes at C5-6 with mild foraminal stenosis bilaterally." The MRI he ordered revealed "multi-level degenerative changes with

- 13 -

moderate to severe central canal stenosis at C6-7 caused by a central disk extrusion" and "moderate-to-severe central canal stenosis . . . at C5-6." At no time did Dr. Seto relate these "degenerative changes" to the October 14, 2002 injury by accident. Rather, he consistently attributed them to claimant's long career as a tailor. Additionally, Dr. Scott Chirichetti, who saw claimant in September 2004, opined that her neck condition was causally related to degenerative joint disease. Dr. Pollart admitted in her deposition that she provided no treatment for claimant's neck condition following the referral to Dr. Seto and that she did not know the cause of the degenerative changes to claimant's cervical spine or whether those changes were caused by or related to the October 14, 2002 accident.

In light of the lack of any medical evidence causally relating claimant's symptoms after January 8, 2003, to her compensable October 14, 2002 injury by accident, we cannot say as a matter of law that claimant sustained her burden of proving the medical treatment she received after January 2003 was causally related to her injury by accident. We hold, therefore, that the commission did not err in finding claimant failed to present sufficient evidence to carry her burden of proof with respect to that treatment.

## V. CONCLUSION

For these reasons, we affirm the judgment of the commission.

<u>Affirmed.</u>