COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Powell and Alston
Argued at Chesapeake, Virginia


VIRGINIA ELECTRIC & POWER COMPANY AND
  DOMINION RESOURCES INC.

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2004-09-1                      JUDGE ROSSIE D. ALSTON, JR.
                                                          MARCH 23, 2010
LINDA D. EARLEY


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

                Arthur T. Aylward (Angela F. Gibbs; Midkiff, Muncie & Ross, P.C.,
                on brief), for appellants.

                John H. Klein (Montagna, Klein, Camden, LLP, on brief), for
                appellee.


        Virginia Electric & Power Company and Dominion Resources Inc. (employer) appeal a

decision of the Workers' Compensation Commission (commission) awarding payment of

medical expenses to Linda D. Earley (claimant).  On appeal, employer asserts (1) the

commission erred in ordering a change in claimant's treating physician because claimant never

made such a request; (2) the commission erred in finding claimant had sufficient justification to

change treating physicians; (3) the commission erred in upholding the factual findings of the

deputy commissioner; (4) the commission erred in finding that claimant proved that the

treatment provided by her new physicians was causally related to her work injury; (5) the

commission erred in finding employer is responsible for treatment rendered by claimant's new

physicians; and (6) the commission erred in designating claimant's new physicians her

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

authorized treating physicians. For the reasons that follow, we hold the commission did not err and affirm the commission's decision with respect to each of the issues presented.

## I. BACKGROUND[1]

On appeal of a decision of the commission, we construe the evidence in the light most favorable to the party prevailing below. Lynchburg Foundry Co. v. Goad, 15 Va. App. 710, 712, 427 S.E.2d 215, 217 (1993). In the instant case, we construe the evidence in the light most favorable to claimant, as she was the prevailing party below.

So viewed, the evidence showed that on November 28, 2005, claimant injured her lower back and leg while working for employer. After the injury, claimant began a course of treatment with Dr. Paul Savas. Dr. Savas performed back surgery for symptoms related to claimant's "disc protrusion." On August 9, 2006, after the surgery, Dr. Savas released claimant from his care, noting that her condition had improved. Claimant returned to her full-time, pre-injury work.

On April 6, 2007, claimant returned to Dr. Savas with complaints of lower back and rib pain. Dr. Savas recommended that claimant undergo breast reduction surgery to alleviate her pain, and he referred claimant to Dr. JoAnne Lopes for plastic surgery. Dr. Savas informed claimant that she should return to him "as needed for her spine."

On May 4, 2007, the commission awarded claimant lifetime medical benefits related to the November 28, 2005 work injury and temporary total disability from May 10, 2006, to August 13, 2006.[2]

---

[1] The record in this case, including the details of claimant's visits to various doctors, is lengthy. However, as the parties are fully conversant with the record and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of this appeal.

[2] Employer does not dispute that the injury on November 28, 2005, is a compensable work injury. Further, employer has never denied coverage for treatment provided by Dr. Savas.

In October 2007, Dr. Lopes performed breast reduction surgery in an attempt to alleviate claimant's back and rib pain. Claimant continued to see Dr. Lopes through March 2008.

Sometime in early 2008, claimant complained to her supervisor, Hank Dykes (Dykes), about worsening pain. Dykes told claimant that he would "get with someone and they would get in touch with [her about] how to go about [seeing a doctor]." At some later point, claimant also contacted her employer's insurance carrier about her need for medical treatment.

On May 6, 2008, after claimant failed to receive any response from her employer or her employer's insurance company, claimant began treatment with Dr. Mark Souther, an internal medicine doctor, whom she selected based on the proximity of his office to her home. Claimant initially complained to Dr. Souther about pain around her rib cage and stomach area, which began about a month after her back surgery. Dr. Souther performed blood tests, X-rays, and an MRI. From these tests, Dr. Souther determined that claimant's pain originated in her back. Dr. Souther referred claimant to Dr. William McAllister, a neurosurgical and spine specialist.

After claimant began treatment with Dr. Souther, an insurance company representative contacted claimant. The insurance representative told claimant that he was investigating whether or not claimant's treatment with Dr. Souther was causally related to her work injury. Claimant provided a medical release, giving the insurance carrier access to her medical records from Drs. Souther and McAllister. According to claimant, the insurance company representative never indicated that she should return to Dr. Savas for treatment.

On June 2, 2008, Dr. McAllister began treating claimant, based on a referral from Dr. Souther. Dr. McAllister noted that claimant presented "a history of left 4-5 disk herniation and microdiskectomy by Dr. Savas in May of 2006." Based on claimant's MRI, Dr. McAllister determined that claimant had disc bulges, resulting in the same symptoms claimant experienced after her initial work injury. Although Dr. McAllister initially recommended surgery, he later

- 3 -

determined that claimant never fully recovered from her surgery with Dr. Savas. Accordingly, Dr. McAllister began administering epidural steroid injections.

On July 10, 2008, claimant filed a claim with the commission for payment of medical bills issued by Drs. Souther and McAllister. Specifically, claimant sought coverage for the following medical bills: $73.00 from Hampton Roads Neurosurgical & Spine Specialists; $3.25, $59.34, and $44.04 from Peninsula Radiological Associates; $115.31, $203.33, and $5,089.00 from Riverside Regional Medical Center; $118.35 from Riverside Internal Medicine; $182.00 from Tidewater Orthopaedic Associates; and $116.24 from Sentara Careplex Hospital.

At a hearing before the deputy commissioner, claimant offered into evidence the medical records from each of her providers, and she testified about her work injury and her care with each provider. Employer offered into evidence additional medical records from claimant's doctors. Neither claimant nor employer presented any other evidence or called any other witnesses.

On February 27, 2009, the deputy commissioner found that claimant was justified in seeking treatment with Dr. Souther, concluding that employer and the insurance carrier failed to inform claimant of her need to return to Dr. Savas, even in the face of her direct inquiry regarding treatment for her compensable injury. The deputy commissioner further found that all of the medical bills resulting from Dr. McAllister's care and some of the bills resulting from Dr. Souther's care were causally related to the compensable injury. Accordingly, the deputy commissioner ordered employer to pay $73.18 for co-payments and referrals by Dr. McAllister[3]; $59.34 for tests ordered by Dr. Souther; $203.33 for lab and radiology fees; $5,089.00 for an MRI; and $118.35 for treatment by Dr. Souther. Finally, the deputy commissioner determined

---

[3] Although claimant only sought payment for $73.00, the medical bill, admitted into evidence, shows claimant owed $73.18.

that Drs. Souther and McAllister were claimant's authorized treating physicians, and she ordered employer to pay for further costs incurred under these providers.

Employer appealed the deputy commissioner's decision to the full commission. On August 13, 2009, a majority of the commission affirmed the deputy commissioner's decision, noting that the deputy commissioner implicitly found claimant's testimony credible. Employer timely filed this appeal.

## II. ANALYSIS

Employer contends the commission erred in several respects. Specifically, employer argues the commission erred in upholding the deputy commissioner's factual findings, in finding that claimant was justified in seeking treatment with Drs. Souther and McAllister, in finding the treatment provided by Drs. Souther and McAllister was causally related to claimant's compensable work injury, and in finding Drs. Souther and McAllister were claimant's authorized treating physicians.

### A. Commission's Factual Determinations

On appeal of a decision of the commission, we must uphold the commission's findings of fact if the record contains credible evidence to support them. Lynchburg Foundry Co., 15 Va. App. at 712, 427 S.E.2d at 217; Classic Floors, Inc. v. Guy, 9 Va. App. 90, 95, 383 S.E.2d 761, 764 (1989). "'In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses.'" Pruden v. Plasser Am. Corp., 45 Va. App 566, 574-75, 612 S.E.2d 738, 742 (2005) (quoting Wagner Enters. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)).

Employer contends the commission erred in finding that claimant spoke with Dykes, her supervisor, before she first sought treatment with Dr. Souther. However, during the hearing

before the deputy commissioner, claimant specifically testified that she spoke with Dykes before she contacted Dr. Souther for an initial visit. In making its factual determinations, the commission noted that the deputy commissioner implicitly found claimant's testimony credible. Further, employer presented no evidence to the contrary. "'In determining whether credible evidence exists,'" this Court does not "'make its own determination of the credibility of the witnesses.'" Id. (quoting Wagner, 12 Va. App. at 894, 407 S.E.2d at 35). Thus, the commission's factual determination was supported by credible evidence. Accordingly, the commission did not err in upholding the deputy commissioner's factual determination that claimant spoke with her supervisor before she sought treatment with Dr. Souther.

### B. Justification for New Treatment

Employer next contends the commission erred when it determined claimant was justified in seeking treatment with a medical provider other than Dr. Savas. Employer argues that claimant presented no circumstances justifying her decision to initiate treatment with an unauthorized physician, as opposed to returning to Dr. Savas.

"As long as necessary after an accident, the employer shall furnish . . . a physician chosen by the injured employee . . . and such other necessary medical attention." Code § 65.2-603(A). The employer is not responsible for the cost of treatment by an unauthorized treating physician where the claimant changed physicians without authority and without justification. Jackson v. Loveland Dist. Co., 1 Va. App. 57, 59, 334 S.E.2d 148, 149 (1985).

The commission determined claimant was justified in seeking treatment with Dr. Souther based on the fact that claimant acted in good faith and because employer failed to inform claimant that she was to return to Dr. Savas for treatment. "It is well settled that where the findings of fact of the [c]omission are based on credible evidence, they are binding and conclusive upon this Court." Bd. of Supervisors v. Taylor, 1 Va. App. 425, 430-31, 339 S.E.2d

565, 568 (1985) (citing Jackson, 1 Va. App. at 58, 334 S.E.2d at 149). "Whether the employee acted in good faith is a credibility determination." H.J. Holz & Son v. Dumas-Thayer, 37 Va. App. 645, 654, 561 S.E.2d 6, 10 (2002) (citing Christiansen v. Metro Bldg. Supply, 18 Va. App. 721, 724, 447 S.E.2d 519, 521 (1994)). "Thus, we will uphold a finding of good faith made by the commission if the record contains credible evidence to support that finding." Id. (citing Christiansen, 18 Va. App. at 724, 447 S.E.2d at 521). "An employee's effort to obtain the approval of the treating physician or the employer before obtaining alternative treatment is evidence of good faith." Id. (citing Shenandoah Prods., Inc. v. Whitlock, 15 Va. App. 207, 213, 421 S.E.2d 483, 486 (1992)). "If an employer fails to furnish a physician, an employee may choose his own." Bradley v. Southland Corp., 3 Va. App. 627, 630, 352 S.E.2d 718, 719 (1987).

When claimant started to experience what she described as "worsening pain," she initially described the pain as more in her ribs than her back. In fact, when she first saw Dr. Souther, she only described pain in her rib cage and stomach area. It was only after Dr. Souther performed a number of tests that he determined the pain originated from claimant's back. Further, claimant testified that she was not aware that she was required to return to Dr. Savas in 2008 because she had not been treated by Dr. Savas since 2007, when he discharged her from his care.

Finally, claimant specifically notified her employer about her need to see a doctor before she saw Dr. Souther. As stated above, that finding is supported by credible evidence in the record. After claimant's direct inquiry, neither claimant's employer nor her employer's insurance carrier contacted claimant before she saw Dr. Souther. The commission found that it was not until *after* claimant was referred to Dr. McAllister that the employer's insurance representative contacted claimant. Even then, claimant was not informed that she must be treated by Dr. Savas. Instead, the insurance representative merely told claimant that the

- 7 -

insurance carrier needed to determine whether the treatment she received by Drs. Souther and McAllister was causally related to her compensable work injury.

Thus, under these circumstances, the commission's decision that claimant acted in good faith and that employer failed to act is supported by credible evidence in the record. The record shows that claimant may not have initially realized her worsening pain originated in her back and that, even then, she asked her employer about seeing a doctor for her pain. Thus, it was employer's inaction that justified claimant's decision to initiate a course of treatment with other doctors. Bradley, 3 Va. App. at 630, 352 S.E.2d at 719. Accordingly, the commission did not err in determining that claimant was justified in seeking treatment from a provider other than Dr. Savas.

### C. Causal Relation to Claimant's Compensable Injury

Employer further contends the commission erred in finding claimant's medical bills were causally related to her compensable work injury. It is claimant's burden to prove that the medical treatment for which she seeks payment is causally related to the accident, is reasonable and necessary for treatment of her compensable injury, and is recommended by an authorized treating physician. Volvo White Truck Corp. v. Hedge, 1 Va. App. 195, 199-200, 336 S.E.2d 903, 906 (1985); accord Code § 65.2-603. "Causation of a medical condition may be proved by either direct or circumstantial evidence, including medical evidence or 'the testimony of a claimant.'" Farmington Country Club v. Marshall, 47 Va. App. 15, 26, 622 S.E.2d 233, 239 (2005) (quoting Dollar Gen. Store v. Cridlin, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996)). "The commission's determination regarding causation is a finding of fact." Id. (citing Marcus v. Arlington County Bd. of Supers., 15 Va. App. 544, 551, 425 S.E.2d 525, 530 (1993)). "Thus, unless we can say as a matter of law that claimant failed to sustain her burden of proving

causation, the commission's findings are binding and conclusive upon us." Id. at 27, 622 S.E.2d at 239.

The commission determined that the following bills were causally related to claimant's compensable injury: $73.18 for co-payments and referrals by Dr. McAllister; $59.34 for tests ordered by Dr. Souther; $203.33 for lab and radiology fees; $5,089.00 for an MRI; and $118.35 for treatment by Dr. Souther. The record shows that although claimant initially complained to Dr. Souther about pain in her rib cage and stomach area, Dr. Souther's tests ultimately confirmed that the pain claimant complained of originated in her spine. Specifically, the May 20, 2008 medical records from Dr. Souther's office indicate that claimant's lower back pain "seem[s] very reminiscent of her previous surgical pain." Accordingly, Dr. Souther referred claimant to Dr. McAllister, a neurosurgical and spine specialist. On May 21, 2008, claimant underwent an MRI of her spine. From the results of the MRI, Dr. McAllister determined that claimant's pain resulted from disc protrusions, similar to those present before claimant underwent back surgery. Thus, Dr. McAllister concluded that claimant might have never fully recovered from the back surgery performed by Dr. Savas.

From this record, the medical evidence shows that the treatments and tests ordered by Drs. Souther and McAllister were causally related to claimant's compensable work injury. Dr. Souther noted that claimant's pain was reminiscent of her previous surgical pain. Dr. McAllister noted that claimant suffered from the same disk protrusions she experienced before surgery. Thus, the medical evidence supports the commission's finding that the treatments performed by Drs. Souther and McAllister were causally related to claimant's compensable injury. Accordingly, the commission did not err in ordering employer to pay the medical bills at issue.

D. Change in Treating Physicians

Finally, employer argues the commission erred in ordering a change in claimant's treating physician because the claim filed was for payment of medical bills, not a change in treating physicians. Thus, employer argues, the commission had no authority to order such a change. Further, employer argues the commission erred in designating Drs. Souther and McAllister claimant's authorized treating physicians and ordering employer to pay for further treatment rendered by these physicians.

"As long as necessary after an accident, the employer shall furnish or cause to be furnished, free of charge to the injured employee, a physician . . . and such other necessary medical attention." Code § 65.2-603(A). "If an employer fails to furnish a physician, an employee may choose his own." Bradley, 3 Va. App. at 630, 352 S.E.2d at 719. "So long as a causal relationship between the industrial accident and the . . . [medical care] is shown, the employer is financially responsible for the medical attention which the attending physician deems necessary." Volvo White Truck Corp., 1 Va. App. at 200, 336 S.E.2d at 906.

When claimant began to experience worsening back pain in 2008, she informed Dykes that she needed to see someone about her pain. According to claimant, Dykes told her he would "get with someone and they would get in touch with [her about] how to go about [seeing a doctor]." However, as previously noted, both employer and the insurance carrier failed to direct claimant either to Dr. Savas or to any other physician authorized by employer. When the insurance carrier finally contacted claimant, it was only to inform her that the insurer needed to determine whether or not her treatment was causally related to her work injury. This inaction by the employer amounted to a failure to furnish claimant with a physician or necessary medical attention. Thus, claimant was entitled to choose a physician of her own. Bradley, 3 Va. App. at 630, 352 S.E.2d at 719.

Further, claimant was not required to file for a change in treating physicians because at the time she asked her employer to provide care for her back pain, she was under the impression that she had no treating physician. Employer only reinforced this belief when it failed to provide any indication that claimant should return to Dr. Savas. Thus, under the circumstances of this case, claimant was entitled to choose her own physician, to whom employer was liable for the causally-related and necessary medical expenses. Accordingly, the commission did not err in designating Drs. Souther and McAllister claimant's authorized treating physicians.

### III. CONCLUSION

For these reasons, we hold the commission did not err in upholding the factual findings of the deputy commissioner. We also hold the commission did not err in finding claimant was justified in seeking treatment from Drs. Souther and McAllister. Further, we hold the commission did not err in finding the medical bills at issue were causally related to claimant's compensable work injury, and ordering employer to pay those medical bills. Finally, we hold the commission did not err in designating Drs. Souther and McAllister claimant's authorized treating physicians and ordering employer to pay the necessary medical expenses therefrom. Accordingly, we affirm the decision.

Affirmed.