COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Felton, Judges Elder and Humphreys
Argued at Richmond, Virginia


UNINSURED EMPLOYER'S FUND
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1933-11-2                      JUDGE ROBERT J. HUMPHREYS
                                                           APRIL 17, 2012
WILLIAM R. CARTER


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Angela F. Gibbs (Arthur T. Aylward; Midkiff, Muncie & Ross, P.C.,
          on briefs), for appellant.

          Robert L. Flax (Robert L. Flax, P.C., on brief), for appellee.


      The Uninsured Employer's Fund ("the Fund") appeals the ruling of the Workers'

Compensation Commission ("commission") awarding William R. Carter ("claimant") temporary

partial disability benefits.  In essence, the Fund argues that the commission erred in finding

(1) that the evidence was sufficient to prove that claimant adequately marketed his residual work

capacity[1]; (2) that Virginia law does not create a duty to market residual work capacity based

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The Fund's specific assignments of error to this end are:

          1.  The Virginia Workers' Compensation Commission
          ("Commission") erred in finding that Mr. Carter adequately
          marketed his residual work capacity based on the facts that
          Mr. Carter was paid on commission, "worked to the tolerance of
          his physical condition, that he was an older worker, and he worked
          approximately the same number of hours after he returned to
          lighter duty work as he did before his injury", where he merely
          accepted two job offers that he did not actively seek out, without
          any efforts to market his residual work capacity to determine if this
          income was truly as much as he was "able to earn", despite earning
          less than his pre-injury average weekly wage.

solely upon the fact that the partially disabled employee is sustaining a wage loss[2]; and (3) that the evidence was sufficient to prove that claimant continues to suffer from a disability that resulted from his work injury.[3]

For the following reasons, this Court affirms the commission on all assignments of error.

---

2. The Commission erred in finding adequate marketing where no marketing actually occurred. The Commission, in effect, erroneously waived Mr. Carter's duty to market in finding that merely returning to work for the pre-injury employer and then a second employer satisfied his marketing requirement given his compensation structure, physical condition, age, and the number of hours worked.

\* \* \* \* \* \* \*

4. The Commission erred in concluding that Mr. Carter's work with Bravo Specialists compromises all of the income that he is able to earn since the injury.

[2] The Fund's specific assignment of error reads:

3. The Commission erred in finding that Virginia law "does not create a duty to market residual work capacity based solely upon a mathematical comparison between the average weekly wage before the accident and the earnings of the partially disabled employee in selective employment" where precedent clearly requires a partially disabled employee, such as Mr. Carter, who is not under an award and is sustaining a wage loss to market his residual work capacity.

[3] The Fund specifically argues:

5. The Commission erred in concluding that Mr. Carter remained disabled as a result of the work injury, absent medical evidence of ongoing disability, by presuming disability based on the claimant's subjective complaints and a recommendation for further evaluation and treatment that was not reasonable and necessary treatment causally related to the work injury.

6. The Commission erred in concluding that any disability from which Mr. Carter suffered related to his work injury, where the most recent treatment received was partially for conditions unrelated to the work injury and where recommendations for evaluation appeared to be driven by litigation concerns, not assessments of his physical capacity for allowing a return to work.

## I. Background

On September 24, 2007, claimant fell ten feet from a ladder to the ground while he was working for Best Brands Automotive Equipment ("Best Brands"), where he was employed as an automotive equipment salesman who also installed and serviced equipment. As a result of the fall he broke both his wrists and injured his back. The parties stipulated that the accident arose out of the course of employment.

For the first month after the accident, claimant was unable to get out to customers because he could not get in and out of the car, or walk and talk to attempt to make sales. Around November 1, 2007, he began calling customers from home and his wife drove him in their personal vehicle to make sales. She would walk in to deliver the goods and write up invoices while claimant stayed in the car. He began going out on his own and working half days around the beginning of March 2008. Claimant worked until his back started hurting and he wasn't able to do any more. His first full month back to work was April 2008. At that time, he was not able to work forty hours a week because of his back pain. Claimant was not able to do any more physical labor for Best Brands, such as installing lifts or repairing equipment, which was a significant portion of his job and income prior to his injury. Claimant worked from home for Best Brands until June 30, 2008, when Best Brands terminated his employment because the business was closing.

On July 1, 2008, the day after claimant was laid off by Best Brands, he began working as the primary salesman for Bravo Specialists ("Bravo"), another automotive supply house. As a personal favor for the owner of Best Brands, the owner of Bravo contacted claimant to offer him the job. Claimant accepted Bravo's offer, and that was the extent of his job search. Claimant sells the same equipment for Bravo that he sold for Best Brands. He is a commissioned

- 3 -

employee, as he was at Best Brands. Some weeks he may work forty hours and some weeks he may not, but he tries to work every day as long as he can. [4]

Claimant is sixty-three years old and has been in the automotive equipment supply business for twenty-four years. He testified that this is the kind of work he is best suited for by his training and experience, he has a good base of customers, and he has always been successful in this business. He chose to stay in this field because of his experience and age.

The deputy commissioner determined that claimant's earnings since the accident have ranged from 34% to 54% of his pre-injury average weekly wage. The commission specifically concluded in its review opinion dated September 7, 2011 that,

> The claimant was a commissioned salesman, and the evidence establishes that his earnings were based upon his success in sales to his customer base. We find that the claimant worked to the tolerance of his physical condition, that he was an older worker, and he worked approximately the same number of hours after he returned to light duty work as he did before his injury. We find that the claimant's work with Bravo Specialists comprises all of the income that he is able to earn since the injury.

The Fund appeals from this judgment.

---

[4] Claimant testified that he probably worked more than forty hours a week prior to his injury and that he still takes "BCs" daily to help relieve his back pain and he did not take BCs prior to his injury. He still struggles getting in and out of the car. He does not drive on weekends because he is worn out and needs a break. As for claimant's right wrist, he is still physically unable to do the labor he performed prior to his accident, such as grasp wrenches and screwdrivers and apply torque to tools. When he last saw his doctor in April 2009, he could not lift more than 10 pounds or open a soda bottle. As of the November 2009 hearing before the deputy commissioner, despite doing exercises, claimant was not able to do any more with his right wrist than he was able to do in April 2009. Claimant continues to wear arm braces every day. He can no longer help his wife with the yard work because of his wrist. His wife still helps him pull up his pants, put on his socks, tie his shoes and ties, and button his clothes.

## II.  Analysis

### A.  Sufficiency of the Evidence to Prove Claimant Reasonably Marketed His Work Capacity

Code § 65.2-502(A) provides that an employer is to pay a partially disabled employee "a weekly compensation equal to 66 2/3 percent of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter."  A claimant "who seeks compensation of the wage differential between his new and his old jobs, must prove that he has made a reasonable effort to market his full remaining work capacity."  National Linen Service v. McGuinn, 8 Va. App. 267, 270, 380 S.E.2d 31, 33 (1989).  "There are no fixed guidelines for determining what constitutes a 'reasonable effort' by an employee to market residual work capacity."  Ford Motor Co. v. Favinger, 275 Va. 83, 89, 654 S.E.2d 575, 579 (2008).

> [I]n deciding whether a partially disabled employee has made reasonable effort to find suitable employment commensurate with his abilities, the commission should consider such factors as: (1) the nature and extent of employee's disability; (2) the employee's training, age, experience, and education; (3) the nature and extent of employee's job search; (4) the employee's intent in conducting his job search; (5) the availability of jobs in the area suitable for the employee, considering his disability; and (6) any other matter affecting employee's capacity to find suitable employment.  The commission, of course, determines which of these or other factors are more or less significant with regard to the particular case.

McGuinn, 8 Va. App. at 272-73, 380 S.E.2d at 34-35.  "In sum, an employee 'must present some evidence that he has engaged in a good faith effort to obtain work *within the tolerance of his physical condition* and has failed to find a job either due to his injury or because no such work was available in the community.'"  Favinger, 275 Va. at 90, 654 S.E.2d at 579 (emphasis added) (quoting McGuinn, 8 Va. App. at 271, 380 S.E.2d at 34).

"The determination as to whether an employee seeking temporary partial disability benefits has made a reasonable effort to market his residual work capacity falls within the Commission's fact-finding, and if the Commission's factual conclusion on that question is supported by credible evidence, it will not be disturbed on appeal." Id. at 88, 654 S.E.2d at 578.

Claimant presented evidence that his injuries prevent him from doing equipment repair and installation work, but he continues to work as a salesman every day until he cannot work any longer. He continues to be limited by the pain in his back and the injury to his right wrist. He does what he is able to do within his maximum physical capabilities, as limited by his injuries. Further, claimant presented evidence as to why the jobs at Best Brands and Bravo were the best jobs for him, given his age, training, and experience. Claimant testified that he was sixty-one years old at the time of the accident, he has been in the automotive equipment sales industry for twenty-four years, he has a good customer base, and has been successful in this business.

It is up to the commission to determine which factors are more or less important in each case. McGuinn, 8 Va. App. at 272-73, 380 S.E.2d at 34-35. The purpose of the factors is to help determine whether a claimant has engaged in a good faith effort to obtain work *within the tolerance of his physical condition.* Favinger, 275 Va. at 90, 654 S.E.2d at 579. In this case, the commission referenced the factors it considered relevant in claimant's case and its findings were supported by the evidence. The evidence supports the finding that claimant engaged in a good faith effort to obtain work that is within the tolerance of his physical condition. Thus, claimant marketed the full extent of his residual work capacity. [5]

---

[5] The fact that claimant did not search for another job but accepted the job offered by his pre-injury employer is not proof that he failed to market his residual work capacity, as the Fund argues. Although physically challenged, claimant worked soon after his accident, accepting work offered by the pre-injury employer, and then accepted a job procured for him by the pre-injury employer. See McGuinn, 8 Va. App. at 273 n.5, 380 S.E.2d at 35 n.5 (The pre-injury employer has the right to offer or find selective employment for the injured employee, and the employee's unreasonable refusal to take the work is in itself justification to deny compensation.).

- 6 -

### B. Duty to Market When Sustaining a Wage Loss

The Fund argues that the commission erred in finding that Virginia law "does not create a duty to market residual work capacity based solely upon a mathematical comparison between the average weekly wage before the accident and the earnings of the partially disabled employee in selective employment." We apply a *de novo* standard of review to pure questions of law. Hilton v. Martin, 275 Va. 176, 180, 654 S.E.2d 572, 574 (2008).

The entire sentence in the commission's review opinion reads: "Favinger does not create a duty to market residual work capacity based solely upon a mathematical comparison between the average weekly wage before the accident and the earnings of the partially disabled employee in selective employment." The commission's statement is correct. The Court in Favinger stated that an employee must present some evidence that he has engaged in a good faith effort to obtain *work within the tolerance of his physical condition*. Favinger, 275 Va. at 90, 654 S.E.2d at 579. The fact that an employee earned more wages per week at his pre-injury job compared to the wages he earns at his post-injury job does not mean that he has residual work capacity that he has not marketed, as suggested by the Fund. Rather, Favinger implies that an employee is expected to work within the tolerance of his physical condition in suitable employment commensurate with his abilities, and the factors listed in McGuinn and cited in Favinger help the commission decide whether a claimant adequately marketed his work capacity to this end. Therefore, the commission did not err in its statement of Virginia law.

### C. Sufficiency of the Evidence to Prove Claimant Remains Disabled from the Work Injury

The Fund argues that claimant did not prove that he remained disabled after February 2008, relying on the facts that claimant received no treatment for his injuries after that date and none of the doctors issued restrictions for claimant when he visited them in April 2009.

Medical evidence is not required to establish a medical condition or disability. "A finding of causation need not be based exclusively on medical evidence, and a claimant is not required to produce a physician's medical opinion in order to establish causation." Farmington Country Club, Inc., v. Marshall, 47 Va. App. 15, 26, 622 S.E.2d 233, 239 (2005). "Causation of a medical condition may be proved by either direct or circumstantial evidence, including medical evidence or 'the testimony of a claimant.'" Id. (quoting Dollar General Store v. Cridlin, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996)). This Court will not reweigh the evidence; as long as a claimant has sustained his burden of proving causation, the commission's findings are binding on this Court. Id. at 27, 622 S.E.2d at 239.

Claimant provided sufficient evidence to prove that his work-related injury caused his current disability. Given all the physical limitations claimant suffered subsequent to his fall that he did not experience prior to his fall, as evidenced by his and his wife's testimony and some medical records, he sustained his burden of proving that his fall from the ladder caused his current disability. Claimant testified that since his injury he works until his back pain prevents him from doing any more. He takes pain killers daily to help relieve his back pain and still struggles getting in and out of the car. He is unable to grasp wrenches and screwdrivers and apply torque to tools due to his right wrist injury. In April 2009, Dr. Zuelzer noted that claimant has grip strength weakness and permanent impairment in his right hand. In November 2009, claimant testified that he had done daily exercises but had not gained strength in his arms since April 2009, when he could not lift more than 10 pounds or open a soda bottle. His wife still helps him get dressed. Claimant's testimony was credible and corroborated by his wife's

testimony.  Therefore, sufficient credible evidence supports the commission's finding that claimant continues to be disabled as a result of his work-related injuries.

For all of the above reasons, the judgment of the commission is affirmed.

<u>Affirmed.</u>